Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 17, 2017

**2017 CO 27**

**No. 16SA324, <u>In Re Clean Energy Collective LLC v. Borrego Solar Sys., Inc.</u>—
Constitutional Law—Personal Jurisdiction—General Jurisdiction—Corporations and
Business Organizations.**

The supreme court issued a rule to show cause to review the trial court's

conclusion that defendant Borrego Solar Systems, Inc. ("Borrego") is subject to general

personal jurisdiction in Colorado.  Because the trial court did not assess whether

Borrego was essentially at home in Colorado, the supreme court concludes it did not

fully apply the test announced in <u>Magill v. Ford Motor Co.</u>, 2016 CO 57, 379 P.3d 1033,

and therefore erred in exercising general personal jurisdiction over Borrego.  Applying

the complete test, the court further concludes Borrego is not subject to general

jurisdiction in this state.

**2017 CO 27**

**Supreme Court Case No. 16SA324**
*Original Proceeding Pursuant to C.A.R. 21*
Boulder County District Court Case No. 16CV30545
Honorable Norma A. Sierra, Judge

**In Re**

**Plaintiff:**

Clean Energy Collective LLC, a Colorado limited liability company,

v.

**Defendants:**

Borrego Solar Systems, Inc., a California corporation; and 1115 Solar Development, LLC, a Delaware limited liability company.

**Rule Made Absolute**
*en banc*
April, 17, 2017

**Attorneys for Plaintiff:**
Roy W. Penny, Jr., P.C.
Roy W. Penny, Jr.
  *Denver, Colorado*

**Attorneys for Defendants:**
Skaggs Faucette LLP
Jeffrey E. Faucette
  *San Francisco, California*

Haddon, Morgan and Foreman, P.C.
Ty Gee
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     We issued a rule to show cause in this case to review the trial court's conclusion that defendant Borrego Solar Systems, Inc. ("Borrego") is subject to general personal jurisdiction in Colorado.  Because the trial court did not assess whether Borrego was essentially at home in Colorado, we conclude it did not fully apply the test we announced in <u>Magill v. Ford Motor Co.</u>, 2016 CO 57, 379 P.3d 1033, and therefore erred in exercising general personal jurisdiction over Borrego.  Applying the complete test ourselves, we conclude Borrego is not subject to general jurisdiction in this state. Accordingly, we now make the rule to show cause absolute.

## I.  Facts and Procedural History

¶2     This action concerns a contractual dispute between Clean Energy Collective LLC ("CEC") and two defendants, Borrego and 1115 Solar Development, LLC ("1115 Solar"). CEC is a Colorado limited liability company headquartered in Louisville.  Borrego is a California corporation headquartered in San Diego, and 1115 Solar is a Delaware limited liability company with its principal place of business in California.  Borrego is 1115 Solar's parent company and owns the latter in its entirety.

¶3     CEC's claims against Borrego and 1115 Solar arise from an asset purchase agreement ("APA") to construct several solar photovoltaic projects.  The APA specified that CEC would pay the defendants to construct three power-generation projects in Massachusetts and allowed for additional projects pursuant to separate contracts governed by the APA's terms.  After the parties were unable to resolve disagreements regarding pricing and payments for projects subject to the APA—all of which were to

be completed outside Colorado—CEC sued the defendants in Boulder County District Court, asserting claims for breach of contract and breach of warranty.

¶4    Borrego and 1115 Solar moved to dismiss CEC's claims, asserting among other defenses lack of personal jurisdiction under C.R.C.P. 12(b)(2). Borrego argued then, as it does now, that it is not "essentially at home" in Colorado and that, as a result, it is not subject to general personal jurisdiction here.

¶5    The trial court denied that motion without holding an evidentiary hearing.[1] Although the court concluded it lacked <u>specific</u> personal jurisdiction over Borrego, it ultimately exercised <u>general</u> personal jurisdiction (alternatively, "general jurisdiction"), reasoning that Borrego's general business contacts with Colorado were "continuous and systematic." The court relied on the following facts to support its conclusion:

- "Borrego had maintained an agent in Colorado for eight years" before the present action began, although "[the] agent was not established in Colorado at the time of service";

- Borrego contracted with a company in Colorado;

---

[1] In the same order, the trial court declined to dismiss CEC's claims against 1115 Solar before receiving additional discovery regarding the relationship between Borrego and 1115 Solar. The court considered that discovery necessary because CEC sought to impute Borrego's liability and jurisdictional contacts to 1115 Solar under a theory of "reverse" veil piercing. <u>See</u> <u>In re Phillips</u>, 139 P.3d 639, 645 (Colo. 2006) (holding Colorado law permits corporate outsider to obligate corporation for debts of dominant shareholder or other corporate insider when justice so requires). The court also noted that if the additional discovery failed to prove an alter-ego relationship, it would then consider whether it could independently exercise personal jurisdiction over 1115 Solar. Thus, this proceeding concerns only whether the trial court could properly exercise general personal jurisdiction over Borrego.

3

- although unrelated to the events at issue, Borrego unsuccessfully bid on several of CEC's projects; and

- although unrelated to the events at issue, Borrego hired a Colorado employee "specifically to facilitate business with [CEC]."

The court did not make a specific finding that Borrego was essentially at home in Colorado and did not consider Borrego's Colorado activities in relation to its activities elsewhere.

¶6 Borrego sought this court's review of that order pursuant to C.A.R. 21, and its petition presents the following issue: "Whether the trial court erred in ruling that it could, consistent with the state and federal due process clauses, exercise general personal jurisdiction over a non-resident California corporation without a finding that the corporation was 'essentially at home' in Colorado." We issued the requested rule to show cause.

## II. Original Jurisdiction

¶7 Original relief under C.A.R. 21 is an extraordinary remedy, limited in both purpose and availability, yet "[w]e often elect to hear challenges to 'the exercise of personal jurisdiction by district courts over out-of-state defendants' because they 'raise the question whether it is unfair to force such a party to defend here at all.'" Magill, ¶ 9, 379 P.3d at 1036 (quoting Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002)). Because the trial court exercised jurisdiction over Borrego exclusively on the ground that Borrego was subject to general personal jurisdiction in

Colorado, and because we worry more generally that trial courts may be misapplying the test we articulated in <u>Magill</u>, we elect to hear this challenge.[2]

### III. Standard of Review

¶8      Interpreting the scope of general personal jurisdiction presents a question of law that we review de novo. <u>Magill</u>, ¶ 11, 379 P.3d at 1036. Similarly, because the trial court relied on documentary evidence alone to determine whether it could exercise jurisdiction, we review de novo whether CEC established the prima facie case necessary to defeat Borrego's 12(b)(2) motion. <u>See</u> <u>Archangel Diamond Corp. v. Lukoil</u>, 123 P.3d 1187, 1192 (Colo. 2005).

### IV. Analysis

¶9      To exercise jurisdiction over a nonresident defendant, a Colorado court must comply with Colorado's long-arm statute and constitutional due process. <u>Archangel</u>, 123 P.3d at 1193. Colorado's long-arm statute confers "the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." <u>Id.</u> Due process in turn requires that a defendant have certain minimum contacts with the forum state so that maintaining a suit against it in that state "does not offend traditional notions of fair play and substantial justice." <u>Magill</u>, ¶ 15, 379 P.3d at 1037

---

[2] In its reply, CEC essentially concedes the trial court misapplied the <u>Magill</u> test and instead argues that we should conclude the record allows the trial court to exercise specific personal jurisdiction over Borrego. A C.A.R. 21 proceeding is not a substitute for an appeal, however, <u>Bell v. Simpson</u>, 918 P.2d 1123, 1125 n.3 (Colo. 1996), and we will not now address the trial court's refusal to exercise specific personal jurisdiction over Borrego; that question lies beyond the scope of this original proceeding. <u>See</u> <u>Magill</u>, ¶ 26, 379 P.3d at 1040 (declining, in proceeding pursuant to C.A.R. 21, to consider whether trial court could exercise specific jurisdiction after concluding it lacked general personal jurisdiction).

(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  "The quantity and nature of the minimum contacts required depends on whether the plaintiff alleges specific or general jurisdiction."  <u>Archangel</u>, 123 P.3d at 1194.  This case concerns the contacts required for general jurisdiction.

¶10     General jurisdiction permits a court to exercise jurisdiction over a defendant for any cause of action arising from the defendant's activities, even if those activities occurred outside the forum state.  <u>Magill</u>, ¶ 16, 379 P.3d at 1037.  The "paradigmatic fora" for general jurisdiction are a corporation's place of incorporation and principal place of business.  <u>Id.</u>  But general jurisdiction is also appropriate when a nonresident corporate defendant's connections with the forum state are "so continuous and systematic as to render [it] <u>essentially at home in the forum State</u>."  <u>Id.</u> at ¶ 17 (emphasis added) (quoting <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 754 (2014)).  In that latter context, "even if a company conducts significant business in a state, if that business represents a relatively small portion of the company's national or international reach, then the company cannot be considered at home in the state."  <u>Id.</u> at ¶ 18, 379 P.3d at 1038.  That requirement sets a high bar, such that "[a] nonresident defendant's contacts with the state will rarely justify exercising general jurisdiction."  <u>Id.</u> at ¶ 17, 379 P.3d at 1037.

¶11     In <u>Magill</u>, this court identified <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437 (1952), as an example of that rare case allowing a court to exercise general jurisdiction over a nonresident corporate defendant.  <u>Magill</u>, ¶ 17, 379 P.3d at 1037.  The defendant mining company in <u>Perkins</u> was incorporated in the Philippines and

6

operated mines there but decamped to Ohio to escape World War II in the Pacific. 342 U.S. at 447–48. The company's president made the move as well, and although the war halted mining activity, the president carried on the rest of Benguet's business from just outside Cincinnati. Id. Those facts indicated the company had temporarily moved its principal place of business to Ohio and therefore allowed the Ohio court to exercise general jurisdiction. Id.

¶12 Conversely, we have looked to the Supreme Court's opinion in Daimler as illustrating when a nonresident corporate defendant's significant contacts with the forum state might still fall short of supporting general jurisdiction. See Magill, ¶ 18, 379 P.3d at 1038. There, the defendant automaker's U.S. subsidiary, from which the Court imputed the defendant's contacts, had established a regional office and other facilities in the forum state of California and was the state's largest supplier of luxury vehicles. Daimler, 134 S. Ct. at 752. Analyzing those contacts against the backdrop of Daimler's national and international operations, however, the Court concluded the company was not at home in California and could not be subjected to general jurisdiction there. See id. at 760–62.

¶13 Magill itself offers further insight into the significant evidence required to prove a corporation is essentially at home in Colorado. There, Ford Motor Co., a Delaware corporation with its principal place of business in Michigan, shared the following connections with Colorado:

- "aggressive" in-state marketing;
- sales through more than thirty Colorado dealerships;

7

- presence of a registered agent;

- maintenance of several offices and businesses;

- training and certification of mechanics to work in Colorado; and

- participation in active litigation, as both plaintiff and defendant.

Magill, ¶ 20, 379 P.3d at 1038. Comparing these facts to those the U.S. Supreme Court considered too slim to support general jurisdiction in Daimler, this court concluded Ford's contacts were also insufficient to support general jurisdiction. Magill, ¶ 21, 379 P.3d at 1038–39.

¶14 Here, the district court failed to apply the Magill test in full. The court considered whether Borrego's contacts with Colorado were "continuous and systematic" without going on to conclude that those contacts rendered Borrego essentially at home in this state. But as we stated in Magill, even if a nonresident corporate defendant's contacts with Colorado are "continuous and systematic" or "significant," general jurisdiction is available only if those contacts also compel the conclusion that the defendant is essentially at home in Colorado. Id. at ¶¶ 17–18, 379 P.3d at 1037–38. Thus, after concluding Borrego's contacts with Colorado were "continuous and systematic," the trial court should have gone on to determine whether they amounted to more than a "relatively small portion of the company's national or international reach," such that Borrego could be considered essentially at home in this state. See id. at ¶ 18, 379 P.3d at 1038.

¶15 Perhaps because the trial court stopped short in its analysis, it exercised general jurisdiction on facts seemingly weaker than those presented in Magill, Perkins, and

Daimler. Borrego may have solicited and facilitated some business in Colorado, but its relationship with this state ended there. Its contacts with Colorado fall short of those present in Magill, where the defendant not only solicited and facilitated business in Colorado, but also operated multiple dealerships and offices here—and we did not find general jurisdiction appropriate in that case. Magill, ¶¶ 20, 24, 379 P.3d at 1038–39. Neither does the record evidence support the conclusion that Borrego treated Colorado as a principal place of business or temporarily oversaw its national operations from this state, as was the case in Perkins, 342 U.S. at 448. And whereas a regional office and substantial forum-state sales could not justify the exercise of general jurisdiction over a defendant with significant out-of-state-operations in Daimler, 134 S. Ct. at 752, 760, CEC alleges the even weaker ties noted above.

¶16 Thus, on the slim jurisdictional facts alleged, we conclude Borrego is not essentially at home in this state, and the trial court therefore erred in exercising general jurisdiction over Borrego.

## V. Conclusion

¶17 Because the trial court did not assess whether Borrego was essentially at home in Colorado, we conclude it did not fully apply the test we announced in Magill and therefore erred in exercising general personal jurisdiction over Borrego. Applying the complete test ourselves, we conclude Borrego is not subject to general jurisdiction in this state. We now make the rule to show cause absolute and remand the case for further proceedings consistent with this opinion.